**SO ORDERED.**

**SIGNED this 4th day of September, 2026.**

Mitchell L. Herren
Chief United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE:**<br><br>**Kathleen Ann Thompson,**<br><br>**Debtor.** | **Case No. 25-10513**<br>**Chapter 13** |

## **Memorandum and Order Denying PNC Bank's Motion for Relief from Automatic Stay (Doc. 58)**

Debtor Kathleen Ann Thompson filed a Chapter 13 petition, and after twice amending her proposed plan, Debtor's Second Amended Plan was confirmed without drawing any objections.[1] Nearly two months after confirmation of that Second Amended Plan, Creditor PNC, National Association ("PNC Bank") filed a Motion for Relief from Automatic Stay, asking the Court to terminate the automatic

[1] Doc. 54.

bankruptcy stay protecting real property located in Schoenchen, Kansas to allow PNC Bank to pursue foreclosure and other state law remedies.[2] PNC Bank argues relief is warranted based on Debtor's failure to make post-confirmation mortgage payments as allegedly required by Debtor's confirmed plan and because Debtor has failed to adequately protect PNC Bank's interest in the property.

The Court denies PNC Bank's motion for relief from stay.[3] Debtor's Second Amended Plan does not obligate Debtor to make post-confirmation mortgage payments and the current record indicates PNC Bank's interest in the real property is adequately protected.

## I. Background

Debtor Kathleen Ann Thompson commenced her bankruptcy case on May 28, 2025, and received confirmation of her Chapter 13 plan on December 12, 2025. Between these two events, Debtor's case faced several hurdles on the road to confirmation. Her first two proposed plans drew objections from the Chapter 13 Trustee ("Trustee") and PNC Bank.

PNC Bank objected to Debtor's initial plan[4] because Debtor was not a signatory on the note secured by the real property at issue.[5] That objection was resolved by an agreed order.[6] The Trustee objected on several others bases:

---

[2] Doc. 58.

[3] PNC Bank appears by Cynthia M. Kern Melone of Millsap & Singer, LLC. Debtor appears by Martin J. Peck.

[4] Doc. 8.

[5] Doc. 22.

[6] Doc. 28.

affordability, feasibility, and several procedural missteps taken by Debtor in the case.[7] To resolve these objections, Debtor then filed her First Amended Plan,[8] but the Trustee objected again, although on different grounds.[9] In a third effort to receive confirmation, Debtor filed her Second Amended Plan.[10] This plan drew no objection, despite containing a new non-standard provision within Section 18 that sought to replace the standard Section 10.4 provision. The new provision states:

> "The debtor will sell her residence and pay off the mortgage claim directly from the proceeds at closing. The remaining proceeds will be retained by the debtor as the proceeds of her exempt homestead."[11]

This new provision differs markedly from the normal language in the standard Section 10.4, which states in part:

> "The current contractual installment payments on the secured claims listed below will be maintained, plus any changes required by the applicable contract that are noticed in conformity with applicable rules."[12]

The Second Amended Plan was confirmed ("Confirmed Plan").[13]

Several weeks after confirmation Debtor filed an Application to Employ Real Estate Agent, evidencing her intent to sell the property as contemplated by the Confirmed Plan.[14] Shortly thereafter, PNC Bank filed its motion for stay relief

---

[7] Doc. 27.

[8] Doc. 31.

[9] Doc. 41.

[10] Doc. 47.

[11] *Id.* p. 6 § 18.

[12] *Id.* p. 3 § 10.4.

[13] Doc. 54.

[14] Doc. 56.

seeking leave from the Court to enforce the mortgage and note pursuant to state law.[15] PNC Bank argues it is entitled to stay relief because: Debtor has not paid post-petition mortgage payments; Debtor has not paid adequate protection payments to PNC Bank; PNC Bank stands to suffer irreparable injury, loss, and damage if the stay is not lifted; and last, as directed towards PNC Bank, Debtor did not propose the Confirmed Plan in good faith as required by11 U.S.C. § 1325(a)(3).[16]

Debtor objected to PNC Bank's motion, pointing out that she had not made mortgage payments because the Confirmed Plan does not require mortgage payments after confirmation.[17] Instead, the non-standard Section 10.4 provides that PNC Bank would be paid in full from the sale proceeds of the real property. After several agreed-upon continuances, the Court granted Debtor's application to employ[18] and asked for additional briefing on the stay relief motion.[19]

PNC Bank's additional brief argues that the Confirmed Plan's standard Section 10.4 and non-standard Section 10.4 do not conflict and are not mutually exclusive; rather, these provisions are "complementary" and "can be performed together because the Debtor can continue making the mortgage payments until the house is sold."[20] Debtor's additional briefing reasserts her argument that the non-

---

[15] Doc. 58.

[16] *Id.* p. 4. Future statutory references are to the Bankruptcy Code, title 11, unless otherwise specified.

[17] Doc. 63.

[18] Doc. 71.

[19] Doc. 73.

[20] Doc. 74 p. 3

standard provision controls over the standard, and that Debtor does not owe post-confirmation mortgage payments under the Confirmed Plan.[21] Debtor also argues the property's equity cushion more than adequately protects PNC Bank's interest. Neither side requested an evidentiary hearing or offered stipulated evidence about Debtor's equity, or lack thereof, in the property. The Court took the matter under advisement.

## II. Analysis

### A. Jurisdiction

Motions regarding the automatic stay are core proceedings over which this Court may exercise subject matter jurisdiction.[22] Venue is proper in this District.[23]

### B. Legal Standard

Debtor's filing of its bankruptcy petition triggered the automatic stay, which prohibits any collection and enforcement efforts by creditors.[24] Still, a creditor may seek relief from the stay to pursue collection and enforcement of its rights under § 362(d), which provides:

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

---

[21] Doc. 76.

[22] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(G) (core proceedings include "motions to terminate, annul, or modify the automatic stay"), and Amended Order of Reference, D. Kan. S.O. 13-1.

[23] 28 U.S.C. § 1409(a).

[24] *See* 11 U.S.C. § 362(a) (filing of a bankruptcy petition "operates as a stay, applicable to all entities, of" delineated activities).

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

PNC Bank asserts it is entitled to relief under § 362(d)(1),[25] which requires a court find "cause" to justify granting relief from the stay. Section 362(d)(1) notes that "cause" may include, but is not limited to, a lack of adequate protection in the property.[26] Under § 362(d)(1), adequate protection protects a creditor and the value for which the creditor bargained with a debtor prior to bankruptcy.[27] That said, adequate protection only serves to protect this interest between the petition date and confirmation of a plan; after confirmation, the plan terms govern a creditor's rights.[28]

To establish a prima facie case of "cause" for relief from the stay, a secured creditor must show either a decline in the value of the property at issue or, at least,

[25] PNC Bank's additional brief supporting its motion for relief from stay cites § 362(d)(1) and (d)(2), but specifically asks for relief only under (d)(1). PNC Bank's original motion for relief from stay does not cite either § 362(d)(1) or (d)(2). Thus, the Court focuses its analysis on § 362(d)(1) because that subsection is the only subsection discussed in PNC Bank's additional brief.

[26] The Supreme Court frames the "adequate protection" requirement as "the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988).

[27] *In re DB Cap. Holdings, LLC*, 454 B.R. 804, 816–17 (Bankr. D. Colo. 2011) (citing *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)) ("Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is evaluated on a case-by-case basis.").

[28] *Salt Creek Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004) (concluding once a plan is confirmed, all issues of adequate protection are foreclosed by the confirmed plan); *In re Ragan,* 140 B.R. 283, 285 (Bankr. D. Kan. 1992).

a threat of a decline in value.[29] This "'may be shown through evidence of declining property values, the increasing amount of the secured debt through interest accruals or otherwise, the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position.'"[30] Generally, courts cannot rely solely on the equity cushion in the property to provide a creditor with adequate protection because the equity cushion serves as only "one means of protecting a creditor's interest"[31] and other forms of adequate protection exist.[32]

Movants carry the initial burden to show the grounds that warrant the court granting stay relief.[33] Once those grounds have been established, then the movant need only establish the debtor's lack of equity in the property, if applicable. The debtor bears the burden on all other issues.[34]

### C. Analysis

#### *1. PNC Bank's Treatment under the Confirmed Plan*

Both parties are correct to point out that the outcome of this motion comes down to the interpretation of Debtor's Confirmed Plan.

---

[29] *See In re DB Cap. Holdings, LLC*, 454 B.R. at 816–17 (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D. N.Y. 1994)).

[30] *Id.* (quoting *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001)).

[31] *In re Mead*, No. BAP CO-19-001, 2019 WL 5257957, at *4 (B.A.P. 10th Cir. 2019) (citing 3 *Collier on Bankruptcy* ¶ 362.07 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019)).

[32] *See* 11 U.S.C. § 361 (specifying forms of adequate protection).

[33] *In re DB Cap. Holdings, LLC*, 454 B.R. at 816 (citing *Anthem Communities*, 267 B.R. at 870–871).

[34] 11 U.S.C.§ 362(g)(1).

PNC Bank argues the Confirmed Plan should be interpreted according to general rules of contract interpretation. It asserts that the doctrine of *contra proferentem* dictates that any ambiguity in the terms of the Confirmed Plan ought to be construed against the party responsible for drafting it: here, Debtor.[35] Based on that position, PNC Bank asserts that Debtor's plan should be construed as requiring Debtor to make monthly mortgage payments under the standard Section 10.4 and to tender full repayment upon the sale of the property as provided under the non-standard Section 10.4 listed in Section 18. PNC Bank asserts Debtor's failure to make mortgage payments alone warrants stay relief.

Debtor does not deny that she has not made regular mortgage payments but points out the Confirmed Plan does not require such payments. Instead, Debtor asserts the non-standard Section 10.4 in Section 18 supersedes the mortgage payment provisions under the standard Section 10.4; thus, the only requirement she must abide by is to pay PNC Bank in full upon the sale of the real property.[36]

Under § 1327(a), when a Chapter 13 plan is confirmed, its terms "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Put differently, the Confirmed Plan "becomes the operative

---

[35] Doc. 74 p. 3.

[36] Doc. 76.

document" of the case.[37] It governs the rights and interests of *all* parties and, unless expressly preserved, it "supersedes all orders entered in the case . . .."[38]

A major consequence of this shift in rights is that a confirmed plan precludes creditors from raising arguments that could have been made prior to confirmation, such as: "'[t]he issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the Chapter 13 debtor. . . .'"[39] These issues are res judicata once the court has confirmed the plan.[40] After confirmation, a creditor's only available path to stay relief is to demonstrate the debtor's post-confirmation actions warrant the requested relief.[41]

Here, the Confirmed Plan's terms are clear and unambiguous as to the rights of Debtor and PNC Bank. The standard Section 10.4, titled "Maintenance of payments and cure by default, if any" regarding the treatment of claims secured by real estate, allows for Debtor to select one of two options: "None", or a standard option to maintain the current contractual installment payments as listed.[42] Neither of these options were selected by Debtor in her Confirmed Plan. Instead,

---

[37] *Diviney v. NationsBank of Tex. (In re Diviney)*, 211 B.R. 951, 964 (Bankr. N.D. Okla. 1997), *abrogated on other grounds by Johnson v. Smith (In re Johnson)*, 501 F.3d 1163 (10th Cir. 2007).

[38] *Id*. at 963–64.

[39] *Id.* (quoting *Anaheim Sav. & Loan Assoc. v. Evans (In re Evans)*, 30 B.R. 530, 531 (B.A.P. 9th Cir. 1983)).

[40] *See id.* (quoting *In re Evans*, 30 B.R. at 531).

[41] *In re Ragan*, 140 B.R. 283, 285 (Bankr. D. Kan. 1992) (quoting *Ford Motor Credit Co. v. Lewis (In re Lewis)*, 8 B.R. 132, 136 (Bankr. D. Idaho 1981)).

[42] Doc. 47 p. 3 § 10.4.

Debtor substituted the non-standard provision in Section 18 titled "Section Number 10. 4," which states:

> "The debtor will sell her residence and pay off the mortgage claim directly from the proceeds at closing. The remaining proceeds will be retained by the debtor as the proceeds of her exempt homestead."[43]

The selection in the Confirmed Plan differs substantially from Debtor's selection in her two previous plan proposals to which PNC Bank and the Trustee objected earlier in the case. In Debtor's first proposed plan, Debtor opted into the standard Section 10.4 by checking the associated box,[44] whereas her second proposed plan shows Debtor selected *both* the standard Section 10.4 option in addition to inserting a different non-standard Section 10.4 in Section 18.[45] Debtor did not do this in her Confirmed Plan.

As stated on the Confirmed Plan itself, "[t]o the extent a Non-Standard Provision conflicts with any other plan provision, the Non-Standard Provision controls."[46] Accordingly, the non-standard Section 10.4 controls over the standard Section 10.4 because it was intended to, and did replace, the standard Section 10.4 when the Court confirmed the plan without objection.

Thus, under the Confirmed Plan, failure to make monthly mortgage payments does not constitute "cause" for relief from the stay, because that provision was replaced by the promise of repayment upon the sale of the property in the non-

---

[43] *Id.* p. 6 § 18.

[44] Doc. 8 p. 3 § 10.4.

[45] Doc. 31 p. 3 § 10.4, 6 § 18.

[46] Doc. 47 p. 6 § 18.

standard Section 10.4. As relevant to this motion, the Confirmed Plan only requires that Debtor make plan payments and repay PNC Bank in full upon sale of the property at issue. The financial figures in the briefs, which are not evidence, indicate the prospective sale would more than cover the amount owed to PNC Bank.[47]

*2. Adequate Protection and Other Arguments*

The Court next turns to address PNC Bank's second argument—that Debtor has failed to adequately protect PNC Bank's interest in the property. This argument fails for similar reasons.

First, the cases cited by PNC Bank are readily distinguishable from this case. They deal with pre-confirmation issues and objections to confirmation in Chapters 11, 12, and 13, or they are cases that deal with Chapter 7 debtors.[48] These cases are cited to support the arguments that "cause" for stay relief exists based Debtor's lack of equity in the property, which is unnecessary to her effective reorganization,[49] and that other courts have rejected similar plans to Debtors' that also omitted post-

[47] According to PNC Bank, at the time it filed its motion for relief from stay, Debtor owed a total amount of $75,796.36 and, by PNC Bank's estimate, had accrued an arrearage of $5,892.80 in monthly payments. Doc. 58. The real property is valued at $97,250.00 on Debtor's schedules, Doc. 1, and according to Debtor, is listed for sale for $155,000, Doc. 63.

[48] *See* Doc. 74 pp. 4–5.

[49] *See* 11 U.S.C. § 362(d)(2). PNC Bank also cited *In re Plymouth Oil Co.*, No. 12-01403, 2013 Bankr. LEXIS 4543 (Bankr. N.D. Iowa Oct. 28, 2013), and *In re Meinders*, 2016 Bankr. LEXIS 1726 (Bankr. N.D. Iowa Apr. 18, 2016), for this proposition. Both courts granted the creditor's motion for relief from stay *at the plan confirmation hearing* because the debtor lacked equity and had failed to make mortgage payments. Thus, those courts found "cause" under § 362(d) due to a lack of adequate protection.

confirmation mortgage payments.[50] Both arguments might be persuasive *prior* to confirmation of Debtor's plan. However, because this is a *post-confirmation* Chapter 13 case, the principles for which these cases were cited do not apply here by virtue of § 1327, which binds Debtor and her creditors to the rights dictated in the Confirmed Plan[51]—even if that plan contradicts the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.[52]

Second, to merit confirmation, Debtor had to establish that her plan "complie[d] with the provisions of [Chapter 13] and with all other applicable provisions of [the Bankruptcy Code]."[53] Having done so, Debtor has established a prima facie case that the Confirmed Plan provides adequate protection to her creditors, as required by § 361.[54] Third, if PNC Bank was concerned about the level of adequate protection provided in Debtor's Confirmed Plan it could have objected on that ground at the time of confirmation.[55] It did not. Accordingly, absent a change in circumstances, PNC Bank may not attempt to alter its treatment under the Confirmed Plan.

---

[50] PNC Bank cited *In re Gavia*, 24 B.R. 573 (B.A.P. 9th Cir. 1982) as an example of when a court refused to confirm a plan that withheld mortgage payments from the creditor. However, that too was at the confirmation hearing.

[51] *In re Ragan*, 140 B.R. 283, 285 (Bankr. D. Kan. 1992) (citing *Anaheim Sav. & Loan Assoc. v. Evans (In re Evans)*, 30 B.R. 530, 531 (B.A.P. 9th Cir. 1983)); *see also Salt Creek Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004) (citing § 1327(a) and stating the "binding effect of confirmation has led courts to conclude that proceedings inconsistent or incompatible with the confirmed plan are improper").

[52] *See United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

[53] 11 U.S.C. § 1325(a).

[54] 11 U.S.C. § 361; *In re Ragan*, 140 B.R. at 285 (quoting *Ford Motor Credit Co. v. Lewis (In re Lewis)*, 8 B.R. 132, 136 (Bankr. D. Idaho 1981)).

[55] *See* 11 U.S.C. § 1325(a)(5).

Further, while PNC Bank could warrant relief from stay under § 362(d)(1) based on a post-confirmation act by Debtor causing a decline in the value of the property or a threat of such decline, PNC Bank has not made a prima facie showing of such an act here. Thus, PNC Bank has failed to carry its initial burden as to § 362(d)(1).[56]

Last, to the extent that PNC Bank also seeks relief under § 362(d)(2) or alleges that Debtor did not file in good faith under § 1325(a)(3), those arguments are also precluded by § 1327(a).[57] Accordingly, the Court also denies PNC Bank's requests for payment of legal fees.

## III. Conclusion

The Court denies PNC Bank's motion for relief from stay because the Confirmed Plan does not obligate Debtor to pay monthly mortgage payments to PNC Bank, and PNC Bank has failed to establish a prima facie case showing of a lack of adequate protection.

**It is so ordered.**

###

---

[56] *In re Ragan*, 140 B.R. at 285 (citing *In re Lewis*, 8 B.R. at 136).

[57] *Id. See also Diviney v. NationsBank of Tex. (In re Diviney)*, 211 B.R. 951, 963-64 (Bankr. N.D. Okla. 1997), *abrogated on other grounds by Johnson v. Smith (In re Johnson)*, 501 F.3d 1163 (10th Cir. 2007) ("'An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing. Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan. The issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the Chapter 13 debtor were all res judicata as of the confirmation of the plan.'" (quoting *In re Evans*, 30 B.R. at 531 (internal alterations omitted))).